2017 BNH 004

___

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 14-11166-BAH |
| | Chapter 7 |
| Lawrence S. Robbins & | |
| Lori L. Robbins, | |
|       Debtors | |
| | |
| Lawrence S. Robbins & | |
| Lori L. Robbins, | |
|       Plaintiffs | |
| | |
| v. | Adv. No. 16-1046-BAH |
| | |
| Walter E. Jock Oil Co., Inc., | |
|       Defendant | |

*Bryan W. Clickner*
*Goffstown, New Hampshire*
*Attorney for the Plaintiffs*

*Michelle Kainen*
*White River Jct., Vermont*
*Attorney for the Defendant*

## MEMORANDUM OPINION

### I.  INTRODUCTION

Before the Court is the Plaintiffs' Motion for Default Judgement (Doc. No. 8) (the "Motion").  The Plaintiffs are Lori and Lawrence Robbins ("Robbinses"), who claim in their two count complaint that the Defendant ("Jock Oil") continued to send them monthly collection notices after they had filed their bankruptcy petition and after they had received their chapter 7 discharge.  On account of Jock Oil's conduct, the Robbinses seek damages for violation of the automatic stay of 11 U.S.C. § 362(a) and violation of the Court's discharge order of October 9, 2014.

1

The Robbinses commenced this adversary proceeding on June 15, 2016. They properly served Jock Oil with the summons and complaint, and Jock Oil failed to answer or otherwise respond. On October 11, 2016, the Court entered an order noting Jock Oil's default. The Robbinses then filed the Motion, to which Jock Oil objected, claiming that the Robbinses offered no support for the amount of damages that they were seeking. On January 4, 2017, the Court held a hearing on the Motion, at which both the Robbinses and Jock Oil were present. At this hearing, the Court granted the Motion as to liability, with no objection from Jock Oil, and then conducted an evidentiary hearing on damages.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire. This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. BACKGROUND

The unchallenged allegations of the complaint and the evidentiary record of the damages hearing establish the following facts. Jock Oil sold and delivered home heating oil to the Robbinses' residence. The Jock Oil account was under Lori Robbins' name only. When the Robbinses commenced this bankruptcy case on June 5, 2014, they scheduled a debt owed by Lori Robbins to Jock Oil, and so it received notice of their joint bankruptcy petition. The first postpetition bill for prepetition debt that the Robbinses received from Jock Oil was dated September 30, 2014. Thereafter, Jock Oil continued to send bills each month for the same prepetition debt, despite having notice of the discharge, which issued on October 9, 2014. Jock Oil ceased sending the billing statements sometime around the date of the filing of the complaint in this adversary proceeding. During this October 2014 – June 2016 time period, Lori Robbins called Jock Oil twice to dissuade it from sending further bills. When these calls did not work,

she contacted her bankruptcy counsel. As a result, the Robbinses, through counsel, sent a letter to Jock Oil, dated April 17, 2015, reminding it of the bankruptcy discharge and threatening legal action if the collection activity did not stop.

At the evidentiary hearing, the Court heard testimony from four witnesses: Lori and Lawrence Robbins, as well as Susan Acheson and Jean Beckly, both employees of Jock Oil.[1] The evidence shows that Lori Robbins became distraught each time she received a billing statement from Jock Oil. She explained that filing a bankruptcy petition had been an embarrassing experience—one that she wanted to put behind her. Every Jock Oil bill she received after the discharge prevented her from moving past the bankruptcy filing. Lori also described the two phone calls she made, attempting to stop the bills. She felt that the individual with whom she spoke at Jock Oil was disrespectful to her. She initially testified that the individual (a woman) laughed or snickered at her when she explained that she had been through bankruptcy and should not be receiving bills, although she later testified that she was uncertain about hearing any audible laughter. Lori did not recall the names of the people at Jock Oil with whom she had spoken, and neither Acheson nor Beckly recalled speaking to Lori.

Lawrence Robbins testified that Lori became so distraught with each bill that he took to hiding them from her when they arrived. This strategy did not stop Lori from eventually learning about all the bills, the discovery of which precipitated the reopening of the bankruptcy case and the filing of this adversary proceeding. Evidence was also introduced that Lori sought

---

[1] With the assent of the parties, the Court accepted the Robbinses' affidavits, attached to the Motion, as their direct testimony. Counsel for Jock Oil then conducted live cross-examination of the Robbinses.

3

psychological treatment for her anxiety while she was receiving the post-discharge bills from Jock Oil, although the subject of the bills only came up during one of these sessions.[2]

The Court heard from the two Jock Oil employees, Acheson and Beckly, about the billing practices and procedures Jock Oil used after learning that a customer who owed it money had filed bankruptcy. The employees described an ad hoc process, in which they would refrain from sending bills to a customer if they happened to remember that a particular customer was in bankruptcy or had received a bankruptcy discharge.[3] Jock Oil's billing system would continue to generate bills for customers, regardless of their bankrupt status, until they were "written-off" at the end of each fiscal year. Acheson and Beckly also related how small a company Jock Oil was, having only three employees, two of whom were under serious personal stress during the relevant time period.

### III. DISCUSSION

The Court will first address damages for Jock Oil's violation of the discharge injunction. The First Circuit Court of Appeals set out the applicable legal standard in <u>Bessette v. Avco Financial Services, Inc.</u>, 230 F.3d 439, 445 (1st Cir. 2000). The "bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages . . . if the merits so require." <u>Id.</u> Those damages may be in the form of actual damages, attorney's fees, or even punitive damages. <u>Id.</u> Damages under § 105 amount to a sanction for civil contempt of a court order. <u>Hann v. Educ. Credit Mgmt. Corp. (In re Hann)</u>, 711 F.3d 235, 242 (1st Cir. 2013) (citing <u>Jamo v. Katahdin Fed. Credit Union (In re Jamo)</u>, 283 F.3d 392, 403 (1st

---

[2] <u>See</u> letter dated October 14, 2016 from Dr. Douglas Speck, Licensed Psychologist, detailing treatment Lori Robbins received (attachment to Motion), and Doc. No. 17, an itemized bill for services that Dr. Speck provided in connection with this proceeding.

[3] For example, Jock Oil introduced one billing statement with a yellow sticky note on it that said "bankruptcy," serving as a reminder that it was not to be mailed.

Cir. 2002)). When issuing a civil contempt sanction under § 105, the Court has "broad discretion" in "both the choice of sanction and the amount of the award." United States v. Torres (In re Rivera Torres), 309 B.R. 643, 648 (B.A.P. 1st Cir. 2004) (rev'd in part on other grounds) (quotations omitted). "The amount of the sanction need only be established by competent evidence, and must bear a reasonable relationship to the actual losses sustained by the injured party." Id. (quotation omitted).

Here the Court finds that damages are appropriate. The Jock Oil billing statements caused Lori Robbins real emotional distress that negatively affected her quality of life for a significant period of time. The Court will award $5,000.00 in damages. This award serves partly to compensate Lori Robbins for the emotional distress she suffered and partly to compensate the Robbinses for their costs in bringing this action.[4]

The Court concludes, however, that no punitive damage award is necessary under these circumstances. While Jock Oil was aware of the proscription against collecting Lori Robbins' discharged debt and nonetheless made such collection attempts, these actions appear to have been the inevitable result of grossly inadequate office practices, rather than a calculated scheme to circumvent the discharge. Additionally, Susan Acheson testified that Jock Oil has instituted new procedures to ensure it will not improperly bill customers involved in the bankruptcy process, decreasing the chance that Jock Oil will run afoul of the automatic stay or discharge injunction in the future.

The Court is not awarding damages pursuant to the stay violation theory. The Robbinses presented no specific evidence that they were damaged by the single billing statement they received while the automatic stay was effective. Given this lack of evidence, the Court will not

---

[4] This award is inclusive of the cost of Dr. Speck's services, but excludes attorney's fees.

5

award any additional damages for that count of the complaint.  Nor is the Court making any specific damage award to Lawrence Robbins, as the Robbinses did not introduce any specific evidence that Jock Oil caused him actual damage, aside from the costs of bringing this litigation.[5]

Finally, the Court will address attorney's fees.  In making an award of attorney's fees the Court applies the lodestar analysis.  In the first step of this analysis, the Court takes the product of a reasonable hourly rate and the number of hours productively spent.  Berliner v. Pappalardo (In re Sullivan), 674 F.3d 65, 69 (1st Cir. 2012).  The Court may then adjust this amount based on a number of factors.  See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718 (5th Cir. 1974).[6]  Here, counsel for the Robbinses has informed the Court that he did not keep any contemporaneous time records because he took this case on a contingency fee basis.  He has nevertheless argued that Jock Oil should pay the entire contingent fee because the Court has previously allowed such an approach, and because to award a lesser amount would be a windfall to the defendant.[7]  Quantitatively, the Robbinses want the Court to first award damages other than attorney's fees and then increase that award by 33.3%—the contingent fee amount from the fee agreement at Doc. No. 16—and use the result as the final damages figure.[8]  For its part, Jock

---

[5] At the hearing, Jock Oil argued that Lawrence Robbins should not receive any damages because his name was not on the billing account, i.e. he was not its direct customer.  Given the lack of evidence that Lawrence Robbins was damaged, the Court does not need to reach this issue.

[6] The classic recitation of factors relevant for consideration in determining the ultimate fee award under the lodestar approach: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, (12) awards in similar cases.  Id. at 718.

[7] In support of their argument, the Robbinses cite the Court's damages award in St. Pierre v. Dovenmuehle Mortgage, Inc., Adv. No. 14-1106-BAH.  The Court does not find the result reached in that case persuasive here.  There was no written decision in St. Pierre and the defendant did not oppose the damages award.

[8] For example, if the Court made an award of $5,000, the final damages amount would be $6,666.67 ($5000 * 1\frac{1}{3} \cong 6{,}666.67$).

Oil has objected to this approach because such an award could be an impermissible "enhancement" over the lodestar amount under Burlington v. Dague, 505 U.S. 557 (1992). In Dague, the Supreme Court held that a federal court awarding fees under a federal fee shifting statute cannot enhance the base lodestar amount just because there is a contingency fee agreement in place between the prevailing party and its legal counsel. Id. at 565.

In Blanchard v. Bergeron, 489 U.S. 87 (1989), the Supreme Court explained the proper relationship between a contingent fee agreement and the lodestar analysis. In Blanchard, the lower court had limited the plaintiff's award under a fee shifting statute to the amount that counsel would have received under its contingent fee agreement with the plaintiff. The Supreme Court held that the amount of the fee award should be determined in accord with the lodestar analysis—first determine a reasonable fee and then adjust accordingly—and should not be automatically limited by the amount of the fee agreement, unless the lodestar analysis itself happened to require that result; "the criterion for the court is not what the parties agree but what is reasonable." Id. at 92.

Accordingly, because the Court is undertaking a lodestar analysis, it will follow the approach outlined in Burlington and Blanchard, even though the Robbinses may not ultimately pay their counsel on a time and effort basis. This approach requires that Jock Oil pay the Robbinses reasonable attorney's fees, no more and no less, a result that avoids a windfall to either side. In this vein, plaintiffs' counsel's decision not to keep any time records is a significant hindrance to the Court. In Grendel's Den, Inc. v. Larkin, the First Circuit explained the necessity for contemporaneous time records and the consequences for failing to keep such records:

> [H]enceforth, in cases involving fee applications for services rendered after the date of this opinion, the absence of detailed contemporaneous time records,

7

> except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases, disallowance.

Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).  Here, the Court has no such records with which to conduct the lodestar analysis, and will reduce the fee award to the Robbinses accordingly.

The Court will award $550 in attorney's fees.  This award accounts for the approximately two hours plaintiffs' counsel spent at the damages hearing, of which the Court has direct knowledge of counsel's time and effort.  The Court has applied the $275 hourly rate mentioned in counsel's fee agreement (Doc. No. 16), finding that rate to be reasonable.  The Court is aware that this award is likely not representative of the time and effort counsel actually spent on this case and that this fee award will likely reduce the Robbinses' ultimate recovery.  See Blanchard, 489 U.S. at 94 (noting that part of the purpose of fee shifting is to prevent attorney's fees from reducing a plaintiff's actual recovery of damages).  Such a result, however, is avoidable in future cases.  Attorneys need to keep time records in cases where fee shifting is involved; the failure to do so negatively affects both attorney and client.

**IV.  CONCLUSION**

For the reasons set forth above, the Court awards $5,000 in actual damages in addition to $550 in attorney's fees.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

Date:   March 9, 2017                              /s/ Bruce A. Harwood
                                                                    Bruce A. Harwood
                                                                    Chief Bankruptcy Judge